DSS:AAS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**13 M 468**

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -

CHOUDRY MUHAMMAD KHALIL,

        Defendant,

- - - - - - - - - - - - - - - - -X

<u>FILED UNDER SEAL</u>

<u>COMPLAINT & AFFIDAVIT IN
SUPPORT OF ARREST WARRANT</u>

(T. 18, U.S.C., § 1001(a)(2))

EASTERN DISTRICT OF NEW YORK, SS:

        SALMAN NAQVI, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), duly appointed according to law and acting as such.

        Upon information and belief, on or about and between
April 27, 2012 and May 12, 2012, both dates being approximate and
inclusive, within the Eastern District of New York and elsewhere,
the defendant CHOUDRY MUHAMMAD KHALIL did knowingly and willfully
make materially false, fictitious and fraudulent statements and
representations, in a matter within the jurisdiction of the
executive branch of the Government of the United States.

        (Title 18, United States Code, Section 1001(a)(2))

        The source of your deponent's information and the
grounds for his belief are as follows:[1]/

---

[1]/     Because the purpose of this affidavit is merely to establish
probable cause, I have not set forth all of the facts and
circumstances of which I am aware.

1.   I am a Special Agent of the FBI, duly appointed according to law and acting as such.  I have been a Special Agent for approximately four-and-a-half years.

2.   During my tenure with the FBI, I have participated in numerous investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants; (c) reviewed and analyzed numerous taped conversations and records; (d) debriefed cooperating individuals; (e) monitored wiretapped conversations and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals.

3.   Since the summer of 2011, the FBI has been investigating a passport fraud ring (the "Organization") operating in Pakistan, the United States, and elsewhere.  The Organization manufactures high-quality counterfeit identity documents, such as international passports, driver's licenses, and U.S. work permits, that feature accurate reproductions of official holograms, stitching, and seals.  The investigation has revealed that, in connection with its counterfeit identity documents operations, the Organization helps facilitate the illegal entry into the United States and Canada of numerous undocumented aliens from Pakistan and elsewhere.

4.   The investigation identified Jamil Ahmed as a principal of the Organization who arranges for unlawful entry of the Organization's clients (the "Clients"), who are illegal

2

aliens, into the United States through the use of fraudulent

identity documents manufactured by the Organization.

      5.  On April 7, 2012, Ahmed was arrested pursuant to a

criminal complaint charging him with conspiring to produce

fraudulent identification documents, in violation of 18 U.S.C. §

1028(f).  On April 24, 2012, a grand jury in the Eastern District

of New York returned a three-count indictment charging Ahmed with

conspiracy to produce fraudulent identification documents, in

violation of 18 U.S.C. § 1028(f), production of fraudulent

identification documents, in violation of 18 U.S.C. § 1028(a)(1),

and production of fraudulent identification documents, in

violation of 18 U.S.C. § 1028(a)(1).  Ahmed pleaded guilty,

pursuant to a plea agreement, to a charge of conspiracy to

produce fraudulent identification documents, and, on March 29,

2013, was sentenced by the Honorable Roslynn R. Mauskopf to 36

months of imprisonment.  See United States v. Ahmed, 12-CR-291

(RRM).

      6.  The investigation has also revealed that Ahmed's

brother, the defendant CHOUDRY MUHAMMAD KHALIL, is another member

of the Organization.  In particular, a cooperating witness, who

has pleaded guilty to federal felony charges and is cooperating

with the government in the hope of a reduced sentence, has

identified KHALIL as a principal of the Organization who helps

arrange for the illegal entry of the Clients into the United

States through the use of fraudulent identity documents manufactured by the Organization. In addition, the FBI has interviewed numerous Clients who illegally entered the United States. These Clients also identified KHALIL as a principal of the Organization.

7. The investigation remains ongoing. To date, two members of the Organization, including Ahmed, have been arrested and charged with conspiracy to produce fraudulent identity documents.

8. During the investigation, FBI agents have attempted on numerous occasions to interview the defendant CHOUDRY MUHAMMAD KHALIL. During these interviews, KHALIL made materially false, fictitious and fraudulent statements and representations.

9. For example, on or about April 27, 2012, FBI agents interviewed the defendant CHOUDRY MUHAMMAD KHALIL at his home in Queens, New York. During the interview, KHALIL initially denied any familial relationship with Ahmed. Later, after continued questioning, KHALIL admitted being a cousin of Ahmed. In fact, U.S. immigration documents prepared by KHALIL and Ahmed, respectively, reflect that they have parents with the same names. A medical records release form prepared by Ahmed at the time of his arrest also reflects that a person with KHALIL's name is

4

Ahmed's brother.   Finally, multiple Clients have identified
KHALIL as Ahmed's brother.

10.   Additionally, on or about May 11, 2012, FBI agents
called the defendant CHOUDRY MUHAMMAD KHALIL on the telephone and
asked KHALIL if he knew the location of a Client ("Client 1").
KHALIL responded that Client 1 was not at KHALIL's residence and
stated that he did not know where Client 1 was presently located.
During a debriefing with Client 1 on the same date, Client 1
confirmed that he/she was in KHALIL's residence at the time that
KHALIL received the above-described call from FBI agents and that
KHALIL knew that Client 1 was in KHALIL's residence.

11.   On May 30, 2013, FBI agents attempted to interview
the defendant CHOUDRY MUHAMMAD KHALIL at his residence.   KHALIL
refused to answer questions about the Organization.   At the time,
flight records reflected that KHALIL was scheduled to fly to
Houston, Texas on June 7, 2013.

12.   On June 1, 2013, FBI agents received notification
that the defendant CHOUDRY MUHAMMAD KHALIL had purchased a plane
ticket to Lahore, Pakistan on Pakistan International Airlines
departing from John F. Kennedy International Airport during the
evening of June 1, 2013.

5

WHEREFORE, your deponent respectfully requests that the defendant CHOUDRY MUHAMMAD KHALIL be dealt with according to law and, given the risk of flight, that the arrest warrant and affidavit be sealed until the defendant has been arrested.

Salman Naqvi
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__th day of June, 2013

HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

6

WHEREFORE, your deponent respectfully requests that the defendant CHOUDRY MUHAMMAD KHALIL be dealt with according to law and, given the risk of flight, that the arrest warrant and affidavit be sealed until the defendant has been arrested.

Salman Naqvi
Special Agent
Federal Bureau of Investigation

Sworn to before me this
1st day of June, 2013


HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

6